IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BERNEST MONTGOMERY,
      Plaintiff,

vs.                             Case No.:  5:14cv91/RV/EMT

KENDAL MAY
and ZACHARY DRAVES,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Bernest Montgomery ("Montgomery"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983.  Presently before the court is Defendants' Motion for Partial Summary Judgment, with an incorporated Statement of Genuine and Material Facts and Memorandum of Law, and supporting materials (ECF No. 54). Montgomery filed a response in opposition to the motion, with an incorporated Statement of Genuine and Material Facts and Memorandum of Law, and supporting materials (ECF No. 71).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ.

P. 72(b).    After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendants' motion for partial summary judgment should be granted.

## I.    BACKGROUND AND INTRODUCTION

At all times relevant to this action, Montgomery was incarcerated at the Northwest Florida Reception Center, an institution of the FDOC (*see* ECF No. 20 (the Third Amended Complaint and operative pleading)).    Montgomery claims that Defendant May used excessive force against him, and that Defendant Draves failed to intervene in the use of force, in violation of the Eighth Amendment.    Montgomery seeks "relief deemed just and appropriate including but not limited to compensation, treatment for injury, plus punitive damages set at the amount of at [sic] trial" (*id.* at 7).

Defendants filed a motion for partial summary judgment, contending the undisputed facts demonstrate that Montgomery cannot recover compensatory or punitive damages, pursuant to 42 U.S.C. § 1997e(e), because he cannot demonstrate he suffered more than de minimis physical injury as a result of the use of force (ECF No. 54 at 3–8, 10–11).    Defendants also argue that Defendant Draves should be dismissed from this case based upon qualified immunity, because the evidence demonstrates that he committed no constitutional violation (*id.* at 9–10).

In Montgomery's response, he argues that much of Defendants' evidence, specifically, Exhibits A, D, E, F, and G, may not be properly considered by the court under Fed. R. Civ. P. 56(e), because those exhibits are unauthenticated (ECF No. 71 at 5–8).  He contends that the evidence which the court may properly consider demonstrates a genuine issue of material fact for trial on the issue of the extent of his physical injuries (*id.* at 8–19).  With respect to Defendant Draves, Montgomery contends he has submitted sufficient evidence to demonstrate a genuine issue of material fact for trial as to whether Draves knew of Defendant May's use of force and was in a position to intervene but failed to do so (*id.* at 19–25).

The court directed Defendants to respond to Montgomery's arguments regarding the lack of authentication (*see* ECF No. 74).  In response, Defendants submitted declarations attesting to the authenticity of the evidence (*see* ECF No. 76). Plaintiff filed a reply, contending that the court should not consider Defendants' supplemental declarations, because they were submitted after the court-ordered deadline for filing dispositive motions (*see* ECF No. 78).

II.     SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case

at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.

Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of

the nonmoving party's case, the burden shifts to the nonmoving party to come forward

with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The

"mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine"

if the "evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the

suit under the governing law."  *Id.*  The nonmoving party must show more than the

existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed.

2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue

of material fact.  *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

"A mere scintilla of evidence in support of the nonmoving party will not suffice to

overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358

F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  The

nonmoving party must either point to evidence in the record or present additional

evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* <u>Celotex Corp.</u>, *supra*; <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); <u>Hammer v. Slater</u>, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); <u>Jones v. Cannon</u>, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* <u>Celotex Corp.</u>, 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Celotex Corp.</u>, 477 U.S. at 322.

III.    DISCUSSION

    A.    <u>Material Facts</u>

As this case comes before the court on Defendants' motion for partial summary judgment, the court is required to view the facts in the light most favorable to Montgomery, the nonmoving party.  *See* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  The court does so here, referring to Defendants' statement of facts, and taking those facts from the parties' pleadings and summary judgment materials of record.   Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1.  Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts.  *See* Montoute v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .

> **(4) Affidavits or Declarations.**  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).  Facts asserted in hearsay statements which are not subject to a hearsay exception, and thus would not be admissible in evidence, are insufficient to show that a fact is genuinely disputed.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact (which is what the court did here), consider the fact undisputed for purposes of the motion for summary judgment, grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it, or issue any other appropriate order.  *See* Fed. R. Civ. P. 56(e).

Applying these standards, the court conveys the following as the material facts for purposes of Defendants' motion for partial summary judgment.

It is undisputed that Defendants were correctional officers at the Northwest Florida Reception Center at the time of the events giving rise to this action (ECF No. 20 at 5).   On January 19, 2012, Defendant May ordered Montgomery to enter the lieutenant's office in the rear of the dormitory (ECF No. 71-1, Ex. A, Declaration of

Bernest Montgomery ¶ 4, Mar. 11, 2016).  Montgomery was restrained with handcuffs behind his back at the time (*id.*).  After entering the office, Defendant May struck Montgomery in the face with his closed fist, knocked him to the floor, and kicked him in his torso with his booted foot (*id.*, ¶ 5).  While Montgomery was on the floor after May had kicked him, he observed Defendant Draves standing at the door of the lieutenant's office (ECF No. 54-2, Deposition of Bernest Montgomery 18:5–19:11, Oct. 21, 2015).  At all times during the encounter between Montgomery and Defendant May, Montgomery offered no resistance and was not combative (ECF No. 20, Third Amended Complaint at 7; Montgomery Decl. ¶ 7, Mar. 11, 2016).[1]  As a result of Defendant May's conduct, Montgomery suffered swelling and pain on the left side of his face, and a cut and swollen elbow (Montgomery Dep. 30:13–22,

---

[1] Montgomery signed his Third Amended Complaint under penalty of perjury (*see* ECF No. 20).  Therefore, the factual allegations in the complaint may be used as an opposing affidavit.  *See* Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986); Sammons v. Taylor, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary."); *see also* 28 U.S.C. § 1746 (setting forth requirements for unsworn declarations under penalty of perjury).  To function as an opposing affidavit, a complaint must be based on personal knowledge and set forth specific facts admissible in evidence.  Fed. R. Civ. P. 56(c); Perry, *supra*.  Accordingly, the court considers those portions of Montgomery's complaint that meet the personal knowledge and specificity requirements as Montgomery's opposition to the motion for summary judgment.  *See also* Moulds v. Bullard, 345 F. App'x 387, 391 (11th Cir. 2009) ("[S]pecific facts pled in a sworn complaint must be considered in opposition to summary judgment.") (citing Perry); Shaw v. Cowart, 300 F. App'x 640, 645 (11th Cir. 2008) ("Facts alleged by the plaintiff in a sworn pleading" must be considered in opposition to summary judgment).

37:6–38:23, Oct. 21, 2015).  Montgomery observed blood on the floor of the office (Montgomery Decl. ¶ 8, Mar. 11, 2016).

Inmate Johnny Fowler observed Defendant May yelling at Montgomery and forcibly take Montgomery into the lieutenant's office on January 19, 2012 (ECF No. 71-1, Ex. B, Declaration of Johnny Fowler, ¶¶ 4–5, Jan. 30, 2016).  Fowler observed May strike Montgomery in the face with his right hand/fist (*id.*, ¶ 6).  As Fowler observed this, Defendant Draves approached Fowler and told him to go away (*id.*, ¶ 7).  As Fowler walked away, he observed Draves looking into the office, and he heard Montgomery call out in pain and beg May to stop kicking him (*id.*, ¶ 8).  After Montgomery left the office, Fowler was assigned to clean the office, and removed blood drops from the floor (*id.*, ¶ 10).

Defendant Draves denies that he witnessed Montgomery being abused on January 19, 2012 (ECF No. 54-9, Declaration of Z. Draves, ¶ 2, Nov. 30, 2015).

On January 25, 2012, six days after the incident, Montgomery was seen by institutional medical staff for examination after correctional staff had applied chemical agents (ECF No. 54-7, Emergency Room Record; ECF No. 76-3, Declaration of Albert Carl Maier, M.D., Apr. 20, 2016).  Montgomery did not report any injuries to his face or elbow, and medical staff did not note any physical injuries to Montgomery's face or elbow (Montgomery Dep. 27:19–28:2, Oct. 21, 2015; ECF No.

54-7, Emergency Room Record).  Montgomery was also interviewed by a psychiatrist,

because he had attempted to hang himself (Montgomery Dep. 27:3–18, Oct. 21, 2015;

ECF No. 54-7, Discharge Summary for Inpatient Mental Health Care).  Montgomery

did not mention the incident involving Defendant May (*see id.*).  The psychiatrist

diagnosed Montgomery with major depressive disorder and anti-social personality

disorder (*id.*).

On January 30, 2012, eleven days after the incident, Montgomery notified

Captain John Hassett of the incident (Montgomery Decl. ¶ 10, Mar. 11, 2016; ECF

No. 54-3, Declaration of John Hassett ¶ 2, Nov. 24, 2015).  Captain Hassett wrote an

incident report and took Montgomery to the medical department, where Montgomery

was examined by Dr. Norma Gilo (Montgomery Decl. ¶ 10, Mar. 11, 2016; Hassett

Decl. ¶ 2, Nov. 24, 2015, attached Incident Report).  Photographs were taken of

Montgomery's face and elbow (ECF No. 76-2, Declaration of John Hassett ¶ 2, Apr.

21, 2016).  The photographs are part of the summary judgment record (ECF No. 76-2,

Hassett Decl. ¶ 2, Apr. 21, 2016; ECF Nos. 54-4, 54-5, 54-6).

In May of 2015, over one year after Montgomery filed this lawsuit,

Montgomery reported to an institutional psychiatrist that he had been physically

abused by a correctional officer two years prior, and since that time was having bad

dreams and nightmares, and his sleep and eating habits were affected (ECF No. 71-1,

Ex. D).  The psychiatrist diagnosed Montgomery as suffering from post-traumatic stress disorder ("PTSD") (*id.*).  Since then, Montgomery has been receiving treatment for PTSD, anti-social personality disorder, and depression (*id.*).

> B.   Defendant Draves

Defendant Draves contends he is entitled to qualified immunity, because he committed no constitutional violation (ECF No. 54 at 9–10).  He argues that according to Montgomery's deposition testimony and his statements to Captain Hassett, Montgomery saw Draves stop at the office door <u>after</u> Mays had quickly punched and kicked him (*id.*).  Draves argues that this evidence demonstrates that he was not in a position to intervene in the alleged spontaneous use of force (*id.*).

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[ ] can be held liable for his nonfeasance."  <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1442 (11th Cir. 1985).  In order for an officer to be liable for failing to stop a constitutional violation such as an unprovoked beating, the officer must be "in a position to intervene." <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407 (11th Cir. 1998) (citation omitted). Whether the officer had time to intervene is a relevant consideration.  *See* <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 (11th Cir. 2000) (reversing a judgment in

favor of the defendant on a failure-to-intervene claim after concluding that the defendant "had time to intervene" but failed to do so).

Inmate Fowler states Defendant Draves <u>approached</u> the office door as Fowler stood at the door and observed May punch Montgomery, which means that Draves actually <u>arrived</u> at the office door <u>after</u> Defendant May had punched Montgomery and knocked him to the floor.  Inmate Fowler states he then observed Draves looking into the office as Fowler heard Montgomery call out in pain and beg May to stop kicking him.  Montgomery admits that May kicked him only once, and that he saw Draves at the door <u>after</u> May kicked him.  There is no evidence suggesting that Draves had any knowledge that May's use of force was forthcoming.   Drawing all reasonable inferences in Montgomery's favor, there is insufficient evidence from which a jury could reasonably conclude that Defendant Draves had sufficient time and was in a position to intervene.  Therefore, Defendant Draves is entitled to judgment in his favor. *See, e.g.*, <u>Marantes, v. Miami-Dade Cnty.</u>, — F. App'x —, 2016 WL 1696838, at *6 (11th Cir. Apr. 28, 2016) (affirming district court's dismissal of failure-to-intervene claim where one officer kicked plaintiff four times in rapid succession without warning, which would leave insufficient time for any of the other officers to

issue a verbal command or physically prevent the kicking)[2]; <u>Baltimore v. City of Albany, Ga.</u>, 183 F. App'x 891, 896–97 (11th Cir. 2006) (stating that an accompanying officer is not responsible for a quick, surprise blow to an arrestee by another officer where the accompanying officer had no knowledge that the blow was forthcoming); <u>Martin v. Anderson</u>, 107 F. Supp. 2d 1342, 1349–50 (M.D. Ala. 1999) (holding that absent evidence that officers on the scene had warning that the arresting officer was going to kick the arrestee in the head, they had no duty to prevent the alleged deadly force).

C.    <u>Limitation on Recovery</u>

Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ."  42 U.S.C. § 1997e(e).  A "prisoner," even though he has alleged a viable constitutional claim, is prevented from seeking punitive or compensatory damages in the absence of physical injury pursuant to § 1997e(e) while in "custody."  <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007), *abrogated*

---

[2] The undersigned cites <u>Marantes</u> and other unpublished cases herein only as persuasive authority and recognizes that such opinions are not considered binding precedent.  *See* U.S. Ct. of App. 11th Cir. Rule 36-2.  The undersigned does the same with respect to opinions of circuit courts of appeals other than the Eleventh Circuit, *see* <u>United States v. Rosenthal</u>, 763 F.2d 1291, 1294 n.4 (11th Cir. 1985), and any district court opinions cited herein.

*on other grounds by* <u>Sossamon v. Texas</u>, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011).  "[T]o avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."  <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309, 1312–13 (11th Cir. 2002).

The leading case on this issue from the Eleventh Circuit, <u>Harris v. Garner</u>, 190 F.3d 1279, 1286–87 (11th Cir. 1999), *vacated in part and reinstated in part*, 216 F.3d 970, 984–85 (11th Cir. 2000) (en banc), held that in order to satisfy § 1997e(e), a prisoner must allege a physical injury that is more than de minimis, but need not allege that it is significant.  In so doing, the court intended to "fuse" the physical injury analysis under § 1997e(e) with the framework set out by the Supreme Court in <u>Hudson v. McMillian</u>, 503 U.S. 1, 9–10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment.  <u>Harris</u>, 190 F.3d at 1286.  The <u>Harris</u> court was careful to state that its holding did not affect its Eighth Amendment jurisprudence but only used the Eighth Amendment standards to guide its analysis under § 1997e(e).  In a footnote to its opinion, the court did leave open the question as to whether a de minimis use of physical force might satisfy section 1997e(e) if it were found "repugnant to the

conscience of mankind." Harris, 190 F.3d at 1287 n.7 (quoting Hudson, 503 U.S. at

10, 112 S. Ct. at 1000).

As it concerns the framework for resolving excessive force claims under the

Eighth Amendment, Hudson set out the following:

> In the excessive force context, society's expectations are different.
> When prison officials maliciously and sadistically use force to cause
> harm, contemporary standards of decency always are violated. *See*
> [Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L. Ed. 2d 251
> (1986)].  This is true whether or not significant injury is evident.
> Otherwise, the Eighth Amendment would permit any physical
> punishment, no matter how diabolic or inhuman, inflicting less than
> some arbitrary quantity of injury.  Such a result would have been as
> unacceptable to the drafters of the Eighth Amendment as it is today. *See*
> Estelle [v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 290, 50 L. Ed. 2d
> 251 (1976)] (proscribing torture and barbarous punishment was 'the
> primary concern of the drafters' of the Eighth Amendment); Wilkerson
> v. Utah, 99 U.S. 130, 136, 25 L. Ed. 345 (1879) ("[I]t is safe to affirm
> that punishments of torture . . . and all others in the same line of
> unnecessary cruelty, are forbidden by [the Eighth Amendment]").
>
> That is not to say that every malevolent touch by a prison guard
> gives rise to a federal cause of action. *See* Johnson v. Glick, 481 F.2d
> [1028,] 1033 [2d Cir. 1973] ("Not every push or shove, even if it may
> later seem unnecessary in the peace of a judge's chambers, violates a
> prisoner's constitutional rights").  The Eighth Amendment's prohibition
> of "cruel and unusual" punishments necessarily excludes from
> constitutional recognition de minimis uses of physical force, provided
> that the use of force is not of a sort "'repugnant to the conscience of
> mankind.'"  Whitley, 475 U.S. at 327, 106 S. Ct. at 1088 (quoting
> Estelle, *supra*, 429 U.S. at 106, 97 S. Ct. at 292) (internal quotation
> marks omitted).

Hudson, 503 U.S. at 9–10.  More recently, the Supreme Court reiterated the holding

of Hudson, rejecting once again "the notion that 'significant injury' is a threshold

requirement for stating an excessive force claim."  Wilkins v. Gaddy, 559 U.S. 34, 37,

130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (explaining that the "core judicial inquiry"

is "that nature of the force" used by prison officers as opposed to the extent of the

injury inflicted).  The Court noted that "[a]n inmate who is gratuitously beaten by

guards does not lose his ability to pursue an excessive force claim merely because he

has the good fortune to escape without serious injury."  Wilkins, 559 U.S. at 38.

Notwithstanding, a prisoner's "relatively modest . . . alleged injuries will no doubt

limit the damages he may recover."  Wilkins, 559 U.S.  at 40.

One pivotal point should be noted, however.  Neither Hudson nor Wilkins

mention the physical injury requirement of § 1997e(e).  Thus, while those two

opinions remain binding precedent for resolving Eighth Amendment excessive force

claims, this court's primary source for resolving the § 1997e(e) issue remains the

Eleventh Circuit's Harris decision.  While Harris does mention fusing its 1997e(e)

analysis with the framework of Hudson, the fact nevertheless remains that the

emphasis in Harris was on the threshold amount of *injury* required under

§ 1997e(e)—greater than de minimis—not on the amount of *force*.

In fact, <u>Harris</u> went on to hold that the use of force presently before it, namely that the inmate was forced to "dry shave," resulted in a de minimis physical injury and therefore did not meet the threshold requirement under § 1997e(e).[3] <u>Harris</u>, 190 F.3d at 1287.  Subsequent cases finding only de minimis physical injury on their facts have similarly followed <u>Harris</u> and found that the § 1997e(e) requirement was not satisfied. <i>See</i> <u>Mann v. McNeil</u>, 360 F. App'x 31, 32 (11th Cir. 2010) (unpublished) (plaintiff alleged vague injuries to his back, scrapes and marks on his legs, and a lapse of time in reordering his medication); <u>Quinlan v. Personal Trans. Servs. Co.</u>, 329 F. App'x 246, 248–49 (11th Cir. 2009) (asthmatic plaintiff alleged temporary chest pain, headache, difficulty breathing and periodic back pain after being transported in prison van); <u>Dixon v. Toole</u>, 225 F. App'x 797, 799 (11th Cir. 2007) (plaintiff, after being forced to sleep in "strip cell" on a concrete platform, claimed—but could not evidence—an aggravation of his preexisting injuries and exposure to Hepatitis-C from his cellmate, and further alleged bruises and welts from shackles); <u>Borroto v. McDonald</u>, No. 5:04cv165/RH/WCS, 2006 WL 2789152, at *5 (N.D. Fla. Sept. 26, 2006) (defendants allegedly punched plaintiff repeatedly in his abdomen and on the

---

[3] The plaintiff (among several) who was the subject of the § 1997e(e) inquiry in <u>Harris</u> also alleged that defendants performed a body cavity search upon him while members of the opposite sex were present, but the court stated that only the "dry shave" incident was before the court for purposes its § 1997e(e) inquiry.  <u>Harris</u>, 190 F.3d at 1286–87.

back of his head, hit him on his left ear, and picked him up off the ground and dropped him on his head, which only resulted in bruising and minimal edema of the lower left ear lobe and a red line approximately one centimeter long behind the left ear on the scalp).[4]

The Eleventh Circuit's recent decision in Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015), bears particular mention.  The inmate in that case alleged that, while hospitalized, he was placed in maximum-security restraints, and though he was given medicine that gave him loose stools, the guard refused to lower his waist-chains such that the inmate was forced to defecate into his jumpsuit and lie in his own excrement for two days.  Brooks, 800 F.3d at 1298.  Although this case was cast under the Eighth Amendment as one of deliberate indifference to medical needs rather than one of excessive force, the court nonetheless spoke in recognition of the degrading and humiliating nature of the defendants' alleged actions—adding that the guards in question laughed at the inmate and taunted him while he suffered.  *Id.*  Despite the degrading nature of the alleged harm, which seems on a par with the "repugnant to the conscience of mankind" standard evoked in Hudson and Wilkins for excessive force

---

[4] Courts in other circuits have also determined that Eighth Amendment claims should similarly be subject to de minimis injury inquiry.  *See, e.g.*, Mitchell v. Horn, 318 F.3d 523, 535–36 (3rd Cir. 2003) (citing Harris with approval and noting that its decision is in line with decisions of the Ninth, Eleventh, and Fifth Circuit Courts of Appeal) (other citations omitted).

cases, and suggested in <u>Harris</u> as the source of a possible exception to the de minimis injury rule of § 1997e(e), the court in <u>Brooks</u> nevertheless held that the inmate's alleged physical injuries were de minimis and applied § 1997e(e) to bar the inmate's claims for compensatory and punitive damages.  <u>Brooks</u>, 800 F.3d at 1303.  The court noted that the inmate's constitutional claim for nominal damages, however, was not barred.  *Id*.

In this case, Defendants previously filed a motion to dismiss, contending Montgomery's request for compensatory and punitive damages was barred by 42 U.S.C. § 1997e(e), because he failed to allege he suffered more than de minimis physical injury as a result of the alleged use of force (*see* ECF No. 32).  Defendants argued that Montgomery's allegations of a cut on his elbow and bump on his face were insufficient to satisfy the physical injury requirement of § 1997e(e) (*id.*).  The court concluded that Montgomery's allegations were sufficient to raise a reasonable inference that he suffered more than de minimis physical injury, which was all that was required at the Rule 12(b)(6) stage, and that further factual development was needed on the issue.

Defendants have now raised the issue again, contending that there is no genuine issue of material fact on the issue of whether Montgomery may recover compensatory or punitive damages, and Defendants are entitled to judgment as a matter of law on

his claims for compensatory and punitive damages, because Montgomery still cannot demonstrate that his alleged physical injuries (i.e., a swollen face and a cut and swollen elbow) were more than a de minimis physical injury (ECF No. 54 at 3–8). Defendants have not argued that they are entitled to summary judgment on the merits of Montgomery's Eighth Amendment claim against Defendant May, and thus do not appear to dispute that a reasonable jury could find, viewing the facts in the light most favorable to Montgomery, that Defendant May's use of force (i.e., punching Montgomery in the face, knocking him to the floor, and kicking him once in the torso, while Montgomery was handcuffed behind his back, non-resistant, and non-combative) was unjustified, excessive, and malicious.  This conduct could rise to the level of "repugnant to the conscience of mankind" and may also be viewed as not taken in a good-faith effort to maintain or restore discipline.  *See* Hudson, 503 U.S. at 7 ("the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm").

However, now, with the opportunity for factual development, there is insufficient evidence from which a jury could reasonably conclude that Montgomery suffered more than de minimis physical injury as a result of Defendant May's conduct. The only evidentiary support for Montgomery's allegations of physical injury is (1) Montgomery's deposition testimony that he suffered swelling and pain on the left side

of his face, and a cut and swollen elbow; and (2) the statements of Montgomery and Inmate Fowler that there were drops of blood on the office floor after the incident. Montgomery's medical records from six days after the incident indicate that Montgomery did not report any physical injuries, and medical staff noted no injuries on his face or elbow.  Additionally, the photographs of Montgomery's face and elbow, taken when he reported the incident eleven days later, show no injury to his face, and only a healed cut above his left elbow (*see* ECF Nos. 54-4, 54-5, 54-6).   The undersigned concludes this is insufficient evidence from which a jury could reasonably conclude that Montgomery suffered more than de minimis physical injury as a result of Defendant May's conduct.  Accordingly, his claims for compensatory or punitive damages are  barred by § 1997e(e).  Montgomery's claim for nominal damages (usually, one dollar), however, is not barred.  *See* Brooks, 800 F.3d at 1307–09.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Defendants' Motion for Partial Summary Judgment (ECF No. 54) be **GRANTED**;

2. That Defendant Draves be **DISMISSED** from this lawsuit; and

3. That Plaintiff Montgomery's claims for compensatory and punitive damages for mental or emotional injury be **DISMISSED**.

Case No.:  5:14cv91/RV/EMT

At Pensacola, Florida, this <u>16</u><sup>th</sup> day of May 2016.


/s/ *Elizabeth M. Timothy* _____
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**



## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**